# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 22, 2013

No. 11-41380

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

MARK WILLIAM WOERNER,

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, BENAVIDES, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

A federal jury convicted Defendant-Appellant Mark Woerner of two counts of possession of child pornography and three counts of distribution of child pornography. On direct appeal, Woerner challenges (1) the district court's denial of his motion to suppress email records, (2) the sufficiency of the evidence against him, and (3) the indictment and sentence, as multiplicitous. Finding no error, we AFFIRM.

## FACTS AND PROCEEDINGS

This child pornography prosecution arose out of what the district court found were independent state and federal investigations into peer-to-peer file sharing of child pornography over the Internet.

No. 11-41380

In the course of his work for the Internet Crimes Against Children Task Force, Detective Andrew Uhlir of the Wheaton, Illinois Police Department patrolled Gigatribe, an Internet peer-to-peer file-sharing network, in search of adult male users who advertised a sexual interest in minor males. Detective Uhlir identified Gigatribe user "sugardaddylv" as a possible suspect based on his online profile,[1] and requested access to his files. On April 14, 2010, Detective Uhlir obtained access and downloaded a number of videos and images depicting children engaged in sexual activities with adults. He then traced the Internet Protocol ("IP") address[2] to a computer located at 103 Ash Street in Los Fresnos, Texas, and reported the matter to the Los Fresnos Police Department ("LFPD").

Relying on that information, Detective Gilbert Rodriguez of the LFPD applied for and received a warrant to search the 103 Ash Street property for evidence of possession and distribution of child pornography ("the state search warrant"). The warrant, which was issued on July 6, 2010, expired after three days.[3] On July 12, 2010, believing the warrant to be expired, Rodriguez and other state officers executed the expired search warrant and seized computers,

---

[1] The online profile for "sugardaddylv" read, at the time of the investigation: Single, White, Daddy-type, Laid-back and easy going, Funloving. Financially secure. Living in Vegas but soon to move. Looking for younger guys to keep me young and to share with, to mentor and to feel - - make feel good. When I move to southernmost texas, only 15min from gulf coast, where the weather is always warm and u can go naked most of the time, I will be looking for a daddies boy to join me, who will be well taken care of. Could this be you? Let me know.

[2] "An [IP] address is a unique 32-bit numeric address, written as numerals separated by periods, identifying each sender or receiver of information traveling across the Internet. An IP address has two parts: the identifier of a particular network on the Internet (say, the first 24 bits) and an identifier of the particular device (which can be a server or a workstation) within that network. In essence, an IP address identifies a single computer . . . ." *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 369 n.6 (5th Cir. 2005).

[3] The search warrant expressly provided that it expired within three days, consistent with Texas law, which provides that "[t]he time allowed for the execution of a search warrant, exclusive of the day of its issuance and of the day of its execution, is: three whole days," TEX. CODE CRIM. PROC. ANN. art. 18.07(a)(2) (West 2012).

2

cameras, VHS tapes, photographs, and electronic storage media. Upon determining that the seized evidence furnished probable cause to believe that Woerner was in possession of child pornography, the state officers arrested Woerner and transported him to the LFPD.

During this same period, and specifically on May 14, 2010, Special Agent Barry Couch of the Buffalo Field Office of the Federal Bureau of Investigation ("FBI") was independently engaged in a similar undercover operation on Gigatribe, and accessed and downloaded 8 videos and 170 images depicting child pornography from the same IP address, which he traced to the same property. He communicated that information to FBI Special Agent Paul Sparke, who applied for and received a warrant to search the 103 Ash Street property for evidence of possession and distribution of child pornography ("the first federal search warrant"). On July 13, 2010, as Special Agent Sparke and his partner, Special Agent Melanie Bailey, were preparing to execute the search warrant, the LFPD informed them of the earlier search and arrest.[4] The FBI proceeded with the search and seized film, videos, tapes, and magazines.

The next day, Special Agents Sparke and Bailey questioned Woerner at the LFPD for approximately two hours. At the beginning of the interview, they orally advised him of his *Miranda* rights and presented him with a written *Miranda* waiver form, which he signed. They then informed him that he would be arrested on child pornography charges. During the interview, Woerner admitted to having a sexual relationship with a minor ("J.L.") and to sharing child pornography over the Internet via his Gigatribe and Yahoo! email accounts.

---

[4] Detective Rodriguez and Special Agent Sparke gave discrepant testimony about when the LFPD contacted the FBI: Rodriguez testified that he called Sparke during the afternoon of July 12, whereas Sparke testified that he was not contacted until the morning of July 13. The district court credited Sparke's account, and, after reviewing the testimony, we conclude that its finding was not clearly erroneous.

No. 11-41380

On July 15, 2010, Special Agents Sparke and Bailey spoke with J.L. and his parents. J.L. told the agents that Woerner made sexual advances toward him and displayed child pornography to him while he stayed at Woerner's residence during the summer of 2010. He also informed the agents that Woerner kept child pornography on a flash drive and external hard drive which, the agents later discovered, had not been seized during the state or federal searches. On the basis of that information, as well as the information provided by Woerner, Special Agent Sparke applied for and received a warrant to search the 103 Ash Street property for those items ("the second federal search warrant"). Agents executed the warrant on July 30, 2010, and seized a Sony Memory Stick flash drive.

Over the course of the investigation, Special Agent Sparke was informed by Woerner and others that Woerner used the following email accounts to access child pornography: "fantastikaktion@yahoo.com" (the "fantastikaktion account"), "mwoerne@juno.com" (the "juno account"), and "mwoerne@hotmail.com" (the "hotmail account"). On the basis of that information, Special Agent Sparke applied for and received a warrant to search the corporate offices of Microsoft, Yahoo!, and United Online for records associated with Woerner's email accounts ("the third federal search warrant"). On August 9, 2010, Special Agent Sparke executed the warrant and obtained the records, which revealed that Woerner sent, between January and July 2010, 65 emails from the fantastikaktion account that contained, in total, more than 90 videos and 1300 images of child pornography.

On August 10, 2010, Woerner was charged in a four-count indictment with possession and distribution of child pornography. The indictment was amended nine days later to correct a typo. Counts One and Two charged Woerner with possessing child pornography on April 14 and May 14, 2010, respectively, in violation of 18 U.S.C. § 2252A(a)(5)(B). Counts Three and Four charged Woerner

No. 11-41380

with distributing child pornography on April 14 and May 14, 2010, respectively, in violation of 18 U.S.C. §§ 2252(a)(2), 2252A(a)(2). A fifth count, for distribution of child pornography through his email account between January 10 and July 12, 2010, in violation of 18 U.S.C. §§ 2252(a)(2), 2252A(a)(2), was charged by superseding indictment on December 7, 2010.

Prior to trial, Woerner moved to suppress evidence seized during the execution of the expired state search warrant, statements he made to FBI agents during his custodial interrogation, and the evidentiary fruits of both encounters. After conducting a hearing, the district court granted, in part, and denied, in part, Woerner's motion to suppress in a memorandum opinion and order (the "first suppression order"). The court ordered the suppression of physical evidence seized from Woerner's home and statements he made to the FBI on the grounds that the physical evidence was seized pursuant to, and his statements were tainted by, the unlawful July 12 search of his home. The court did not suppress evidence derived from the FBI interview of J.L. and his family or the July 30 search of Woerner's home, concluding that such evidence was not tainted by the unlawful search. Woerner later moved for clarification of the suppression order. Specifically, Woerner inquired whether evidence seized pursuant to the third federal search warrant, including records relating to his fantastikaktion account, was suppressible as fruit of his suppressed confession. In a second memorandum and order (the "second suppression order"), the court characterized Woerner's motion for clarification as a second motion to suppress, and ruled that suppression was not warranted because the evidence at issue fell within the good faith exception to the exclusionary rule.

After a two-day jury trial, Woerner was convicted on all five counts. He was sentenced to 120 months' imprisonment for each of the possession counts and 240 months' imprisonment for each of the distribution counts, to be served

5

consecutively, for a total of 960 months' imprisonment, the statutory maximum. He timely appealed.

## DISCUSSION

Woerner challenges his conviction on three grounds.  First, he argues that emails from his fantastikaktion account should have been suppressed because the warrant authorizing their seizure was supported by evidence obtained through an unlawful search.  Second, Woerner contends that the evidence against him was insufficient because no witness testified that he was at his computer when the child pornography was downloaded, possessed or distributed. Third, Woerner submits that the indictment and his sentence were multiplicitous because his conduct amounted to no more than one continuous crime.

## I.   Suppression

Woerner challenges the district court's denial of his motion to suppress inculpatory emails from his fantastikaktion account.  The district court ruled that such evidence fell within the good faith exception to the exclusionary rule. We review the district court's factual findings for clear error and its conclusions of law *de novo*, *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003), and will "uphold the district court's ruling to deny the suppression motion if there is any reasonable view of the evidence to support it," *United States v. Michelletti*, 13 F.3d 838, 841 (5th Cir. 1994) (en banc) (internal quotation marks omitted).

The evidence at issue was obtained pursuant to a search warrant, so we begin by evaluating whether the good faith exception to the exclusionary rule applies. *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1129 (5th Cir. 1997). Under the good faith exception, evidence obtained during the execution of a warrant later determined to be deficient is nonetheless admissible if the executing officer's reliance on the warrant was objectively reasonable and made in good faith. *Payne*, 341 F.3d at 399–400 (citing *United States v. Leon*, 468 U.S. 897, 921–25 (1984)).  We have identified four situations in which the good faith

exception does not apply: (1) when the issuing magistrate was misled by information in an affidavit that the affiant knew or reasonably should have known was false; (2) when the issuing magistrate wholly abandoned his judicial role; (3) when the warrant affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable; and (4) when the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid. *Id.*

As the district court pointed out, this case calls upon us to answer whether the good faith exception applies in a fifth situation: when the magistrate's probable cause finding is based on evidence that was the product of an illegal search or seizure. Statements made by Woerner during the custodial interrogation, which were later suppressed as fruits of the unlawful July 12 search, appear in paragraphs 30 and 31 of the warrant affidavit supporting the third federal search warrant. The district court found, and the government concedes, that such statements were the only evidence in the warrant affidavit specifically linking Woerner's possession of child pornography to the fantastikaktion account.

We decline to announce a categorical rule governing this situation, following *Leon*'s guidance that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918. We note that the purpose of the exclusionary rule—deterring future Fourth Amendment violations—would be served, in some cases, by suppressing evidence seized pursuant to a warrant supported by evidence obtained through an unlawful search. *See Davis v. United States*, 131 S. Ct. 2419, 2426 (2011) ("The rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations."). For example, if the officer applying for the warrant knew or had reason to know that the information was

tainted and included it anyway without full disclosure and explanation, then suppressing the evidence seized pursuant to that warrant "pay[s] its way by deterring official lawlessness." *Illinois v. Gates*, 462 U.S. 213, 258 (1983) (White, J., concurring); *see also United States v. McGough*, 412 F.3d 1232, 1240 (11th Cir. 2005); *United States v. McClain*, 444 F.3d 556, 565–66 (6th Cir. 2005); *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996); *United States v. Wanless*, 882 F.2d 1459, 1466 (9th Cir. 1989); *United States v. White*, 890 F.2d 1413, 1417–19 (8th Cir. 1989); *United States v. Thornton*, 746 F.2d 39, 49 (D.C. Cir. 1984). Suppression likewise might be justified if the officer responsible for the illegal predicate search provided information—knowing it to be tainted, but concealing that fact—to a second officer for use in a successive search warrant application.

The facts before us, however, present a far different case. As the district court found,

> [T]he law enforcement officers who carried out each investigation did not become aware of the existence of the other investigation until after Woerner's home was searched and he was arrested on July 12, 2010. Nothing in the record suggests that Gilbert Rodriguez, the Los Fresnos Police Department officer who conducted the original search, intentionally set out to launder the fruits of the illegal search conducted on July 12, 2010, by passing the illegally-obtained evidence to the unsuspecting FBI agents who prepared the application of the August 6 warrant. Nor do the facts of this case, as this Court finds them, give rise to the inference of intentional or reckless misconduct on Rodriguez's part. After hearing all of the testimony, the Court finds that the FBI took control of the investigation on July 13, 2010, for reasons unrelated to the illegal search. This Court therefore finds that the police misconduct leading to the inclusion of Woerner's statements in paragraphs 30 and 31 of the August 6 warrant application was at most the result of negligence of one or more law enforcement officers.

Moreover, Special Agent Sparke, the affiant for the third federal search warrant, could not have known that statements made by Woerner in the FBI interview

would later be suppressed.  The FBI searched Woerner's home pursuant to a valid warrant, and Woerner signed a valid *Miranda* waiver before making inculpatory statements during the FBI interview.  Under these facts, involving state and federal investigations that were parallels, suppression is not justified. *Cf. United States v. Pope*, 467 F.3d 912, 915–20 (5th Cir. 2006) (applying good faith exception where, as here, second search warrant was based on information discovered during an initial search later determined to be unlawful).

Having concluded that the good faith exception applies, we end our suppression analysis at this stage. *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002).

## II.    Sufficiency of the Evidence

Woerner argues that the evidence adduced at trial is insufficient to support his convictions because no witness testified that Woerner was at his computer when the child pornography was downloaded, possessed or distributed.

"A challenge to the sufficiency of evidence following a proper motion for acquittal is reviewed by this court *de novo.*" *United States v. Winkler*, 639 F.3d 692, 696 (5th Cir. 2011).  Because Woerner raised his sufficiency challenge at the close of evidence, the standard of review is "whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt," *United States v. Moreland*, 665 F.3d 137, 148–49 (5th Cir. 2011).  In determining whether this standard is met, we "view the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict." *United States v. Percel*, 553 F.3d 903, 910 (5th Cir. 2008).

### A.    Counts One and Two

To prove its possession counts against Woerner, the government was required to show beyond a reasonable doubt that he (1) knowingly (2) possessed material containing an image of child pornography (3) that had been transported

in interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(5)(B); *Moreland*, 665 F.3d at 149.

At the close of evidence, Woerner moved for a directed verdict on the basis that the government "failed to prove each and every element of its necessary elements in regard to counts one through five." On appeal, Woerner restricts his sufficiency challenge to the "knowing" and "possession" elements. Specifically, Woerner argues that the government cannot establish possession, much less knowing possession, because no witness testified that Woerner was at his computer when the child pornography was downloaded, possessed or distributed. The government may prove possession by showing that the defendant actually or constructively possessed material containing child pornography. *Moreland*, 665 F.3d at 149. "Actual possession means the defendant knowingly has direct physical control over a thing at a given time." *Id.* "Constructive possession is the ownership, dominion or control over an illegal item itself or dominion or control over the premises in which the item is found." *Id.* Where, as here, there is no evidence that the defendant had direct physical control over the images at issue, we proceed to a constructive possession analysis. *See id.* at 150; *United States v. Terrell*, 700 F.3d 755, 765 (5th Cir. 2012).

Our "common sense, fact-specific approach" to determine constructive possession often hinges on whether the defendant had exclusive or shared control over the place in which the child pornography was found. *Moreland*, 665 F.3d at 150–52. "Dominion, control, and knowledge, in most cases, may be inferred if a defendant had exclusive possession of the place in which the contraband is found, but this inference cannot be sustained if the defendant shared joint occupancy of the place." *Id.* If the place where the child pornography is found is shared by multiple users, the government must introduce some evidence, in addition to the evidence of shared use, to support a

reasonable jury inference that the defendant knew that the images existed and had the knowledge and ability to access and exercise dominion and control over them. *Id. at* 150–51.

Woerner contends that neither of the places where the child pornography was found—his fantastikaktion account and Gigatribe shared folder—were under his exclusive use and control. As evidence of shared usage of his computer and email account, Woerner submits that both J.L., the minor who stayed over at his house, and Jeremiah Walker, his former roommate and the creator of the fantastikaktion account, both had access to Woerner's computer and knew the login and password to his fantastikaktion account. The IP address linking the fantastikaktion and Gigatribe accounts to Woerner, he continues, could have belonged to any person who accessed his unsecured wireless internet.

Assuming, *arguendo*, that neither the computer nor the email account was under Woerner's exclusive use and control, we nonetheless reject Woerner's sufficiency challenge because the government introduced considerable evidence from which the jury could have reasonably inferred that Woerner knew that the images existed and had the knowledge and ability to access and exercise dominion and control over them:

- The IP address from which the child pornography was downloaded and distributed via the fantastikaktion and Gigatribe accounts was registered to the Ash street property where Woerner resided. Woerner's neighbor testified that Woerner lived alone, and Woerner's mailman testified that he did not deliver mail to any other person at that address during the relevant time period.

- The profile picture associated with the Gigatribe account "sugardaddylv" from which the child pornography was distributed was of Woerner, and the profile contained other identifying information, such as Woerner's relative age, ethnicity, background, and interests.

- The fantastikaktion account, which contained child pornography and from which child pornography was distributed, was registered

11

No. 11-41380

in Woerner's name. Although the account initially belonged to Jeremiah Walker, his former roommate, it was left to Woerner when Walker moved out in 2006, and Woerner subsequently changed the password so others would not have access. Emails sent from that account often included identifying photographs and information about his daily life, and were regularly signed "Mark." Many emails sent between January and July 2010 contained child pornography and commentary from Woerner on the substance and quality of the images and videos, indicating that Woerner was aware of their illegal content and knowingly distributed them to others.

- More than 90 videos and 1300 images of child pornography were found in Woerner's fantastikaktion account alone, and their content was evident from their file names, undercutting any potential argument that they were downloaded by mistake. *See United States v. Payne*, 341 F.3d at 404 (holding that "the number of images in Payne's possession, taken together with the suggestive titles of the photographs," among other evidence, "support[ed] the jury's inference that Payne knew he was receiving child pornography").

- J.L. testified that Woerner gave him a flash drive containing images of child pornography. According to J.L., Woerner told him that he should share the child pornography with other cadets at flight school, but acknowledged they would both get in trouble if he did, evidence that Woerner possessed the images and was aware of their illegal content.

Reviewing this evidence in a light most favorable to the jury's verdict, we conclude that it is more than sufficient to support Woerner's convictions for possession of child pornography. We have affirmed child pornography possession convictions against sufficiency challenges where the evidence of knowing possession was less comprehensive than it is here. *See, e.g.*, *Terrell*, 700 F.3d at 765; *Winkler*, 639 F.3d at 700; *United States v. Goff*, 155 F. App'x 773, 775–76 (5th Cir. 2005) (per curiam); *United States v. Rios*, 477 F. App'x 209, 210 (5th Cir. 2012) (per curiam).

The principal deficiency in the government's case to which Woerner objects—that no witness put him at the computer when the child pornography was downloaded, possessed or distributed—lacks the significance he attributes

to it.  More often than not the government lacks such evidence because child pornography is not something people tend to download, possess, or distribute in the company of others.  Even if the lack of witnesses would allow Woerner to craft a plausible narrative for how the child pornography ended up in his email and file-sharing accounts, that would not be enough to upset the jury verdict against him. *Winkler*, 639 F.3d at 700 ("At most, Winkler posited plausible alternative explanations for how the illicit pornography came to be on his computer. But a jury is not required to accept any alternative explanation. Rather, taking into account the overwhelming evidence the government presented of Winkler's involvement with child pornography, and that he purchased access to child pornography websites and downloaded child pornography, the evidence presented by the government was sufficient for the jury to reject the evidence presented by the defense, and to credit the prosecution's case.") (citation omitted); *see also Moreland*, 665 F.3d at 155–60 (Jolly, J., dissenting) (emphasizing that it is the province of the jury to repudiate a defendant's account, however persuasive it may seem on appeal).

## B.    Counts Three, Four, and Five

To prove its distribution counts against Woerner, the government was required to establish beyond a reasonable doubt that he (1) knowingly (2) distributed a visual depiction of a minor engaging in sexually explicit conduct (3) which had either traveled in interstate commerce or been produced using

materials that had traveled in interstate commerce.[5] 18 U.S.C. § 2252(a)(2); *United States v. Chiaradio*, 684 F.3d 265, 281 (1st Cir. 2012).

Woerner's challenge to the distribution counts is the same as his challenge to the possession counts: namely, that the evidence is insufficient to prove beyond a reasonable doubt that he distributed child pornography because "no witnesses put Woerner in front of his computer" when the images were distributed. He does not contest that child pornography was distributed, only that he distributed it.

Reviewing the evidence in a light most favorable to the jury's verdict, we conclude that there was sufficient evidence linking Woerner to the emails and Gigatribe account. The Gigatribe profile for user "sugardaddylv" contained a picture of Woerner as well as other identifying information, such as Woerner's relative age, ethnicity, background, and interests. The fantastikaktion email account was registered in Woerner's name, and there is no evidence at others had access to it when the emails were sent. Many such emails included photographs of Woerner and information about his daily life, and were signed "Mark." It was reasonable for the jury to infer from such evidence that Woerner, not an unidentified third party, was responsible for distributing the child pornography from his email and Gigatribe accounts.

## III.  Multiplicity

At the close of evidence, Woerner's counsel moved to dismiss one of Counts One and Two and one of Counts Three and Four on the basis that the

---

[5] The indictment charges Woerner, in Counts Three, Four, and Five, each time, with violating two separate statutes proscribing the distribution of child pornography: 18 U.S.C. § 2252(a)(2), which proscribes the knowing distribution of any visual depiction of a minor engaging in sexually explicit conduct, and 18 U.S.C. § 2252A(a)(2), which proscribes the knowing distribution of any child pornography. Woerner did not raise a duplicity challenge before the district court and does not raise one on appeal, however. *See United States v. Reagan*, 596 F.3d 251, 253 (5th Cir. 2010) ("Reagan did not raise a duplicity challenge before the district court and does not raise one on appeal. Accordingly, we do not consider whether the sentence was duplicitous.")

government failed to show two separate acts of possession and distribution. The court denied both motions. Woerner's counsel did not, at that time, move to dismiss Count Five, which charges distribution of child pornography from the fantastikaktion account between January and July 2010. On appeal, Woerner continues to press his multiplicity challenge, but appears to take the alternative position that only one total count of conviction should stand. He does not specify which one.

We review trial court rulings on multiplicity challenges *de novo*. *United States v. Kimbrough*, 69 F.3d 723, 728–29 (5th Cir. 1995). Where a defendant raises a multiplicity challenge for the first time on appeal, we review for plain error. *United States v. Spurlin*, 664 F.3d 954, 965 (5th Cir. 2011). Accordingly, Woerner's mulitiplicity challenge with respect to Counts One through Four is reviewed *de novo*, and his challenge to Count Five is reviewed for plain error.

An indictment is multiplicitous if it charges a single offense in separate counts. *See United States v. Ogba*, 526 F.3d 214, 232–33 (5th Cir. 2008) ("A challenge to multiplicity invokes the Double Jeopardy Clause, which protects against multiple punishments for the same offense, where Congress has not authorized cumulative punishment for one offense.") (internal quotation marks and citation omitted). There are at least two species of multiplicity challenges, both of which are implicated by this appeal. The first type arises when a defendant is charged with violating two different statutes, one of which is arguably the lesser included offense of the other. This is the species of multiplicity challenge addressed in *Blockburger v. United States*, 284 U.S. 299 (1932)*,* and its progeny. Unless each offense requires proof of an element that the other does not, a defendant may not be charged with both. *United States v. Nguyen*, 28 F.3d 477, 485 (5th Cir. 1994) (citing *Blockburger*, 284 U.S. at 303–05). The second type of multiplicity challenge arises when charges for multiple violations of the same statute are predicated on arguably the same

15

criminal conduct. In that circumstance, the court inquires "whether separate and distinct prohibited acts, made punishable by law, have been committed." *United States v. Planck*, 493 F.3d 501, 503 (5th Cir. 2007).

In his first multiplicity challenge, Woerner argues that possession of child pornography is a lesser-included offense of distribution of child pornography, comparing the two crimes to simple possession of a controlled substance and possession with intent to distribute. His comparison is inapt. Simple possession of a controlled substance does not contain an element that possession with intent to distribute lacks, and thus, under *Blockburger*, a defendant may not be convicted of both offenses if they are predicated on the same act. *United States v. Finley*, 477 F.3d 250, 256–57 (5th Cir. 2007). The same is not true of possession and distribution of child pornography. A defendant need not possess child pornography to distribute it, *Chiaradio*, 684 F.3d at 280 ("One can envision circumstances in which an individual could be guilty of distribution without ever obtaining possession of (or even coming into contact with) the contraband. For example, the broker of a deal between a person who has child pornography and a person who wishes to procure it may be guilty of distribution but not guilty of possession."), and, *vice versa*, a defendant need not distribute child pornography to possess it, *United States v. Goluba*, 672 F.3d 304, 307 (5th Cir. 2012) ("[T]he forensic analysis of [the defendant]'s computers 'revealed that [he] did not distribute his collection of child pornography.' "). For that reason, we join the First and Seventh Circuits in holding that possession of child pornography is not the lesser-included offense of distribution of child pornography, *see United States v. Chiaradio*, 684 F.3d 265, 280 (5th Cir. 2012); *United States v. Faulds*, 612 F.3d 566, 569–71 (7th Cir. 2010), and correspondingly reject Woerner's claim that Counts One and Two are lesser included offenses of Counts Three, Four, and Five.

In his second multiplicity challenge, Woerner argues that he did not commit two separate acts of possession and three separate acts of distribution

of child pornography.  To reiterate, the test is "whether separate and distinct prohibited acts, made punishable by law, have been committed." *Planck*, 493 F.3d at 503.  That test has two steps.  First, we look to the statute charged to ascertain the "allowable unit of prosecution," or the *actus reus* of the crime. *United States v. Reedy*, 304 F.3d 358, 365 (5th Cir. 2002).  "Congress's intent is paramount on this point: the legislature may castigate a particular act by exposing the actor to several prosecutions and punishments, or it may specify that the act should only be subject to a single unit of prosecution." *Chiaradio*, 684 F.3d at 272.  Second, we review the evidence to see how many distinct criminal acts the defendant committed. *United States v. Buchanan*, 485 F.3d 274, 282 (5th Cir. 2007).

### A.    Multiplicity Challenge to Possession Counts

The indictment charges Woerner, in Counts One and Two, with "knowingly possess[ing] material that contained images of child pornography," in violation of 18 U.S.C. § 2252A(a)(5)(B).  The allowable unit of prosecution for § 2252A(a)(5)(B) is each "material," or medium, containing an image of child pornography. *Planck*, 493 F.3d at 504.  To charge multiple possession counts, the government must have evidence that a defendant (1) "has images stored in separate materials," and (2) "the prohibited images were obtained through the result of different transactions." *Id.*

Woerner argues that the two possession counts are predicated on the same conduct.  The government's response—that Counts One and Two are not multiplicitous because Woerner possessed child pornography on different days—overlooks that the pertinent unit of prosecution is each material, not each day. *See id.*; *see also United States v. Ehle*, 640 F.3d 689, 697 (6th Cir. 2011) ("Carried to its logical extreme, the idea would permit possession of contraband for ten days (240 hours) to be charged as ten (or maybe 240) separate counts of

possession. The policy underlying the Double Jeopardy Clause clearly does not permit such parsing.").

Under the governing standard, whether Counts One and Two are multiplicitous hinges upon whether the evidence adduced at trial was sufficient to support the jury's verdict that (1) Woerner possessed two or more separate materials, and (2) the images contained therein were obtained through different transactions. The latter is straightforward. The jury was entitled to infer from the large number of images and videos downloaded from Woerner's Gigatribe shared folder on April 14 and May 14, 2010, and emailed from Woerner's fantastikaktion account between January 10 and July 2, 2010, that the images in his possession were obtained through different transactions. *Planck*, 493 F.3d at 506 (Wiener, J., concurring) ("Given the overwhelming number of images and movies stored on the computers and diskettes in Planck's house, it would exceed credulity to conclude that Planck acquired, or could have acquired, all the images and movies at the very same time."); *United States v. Hinkeldey*, 626 F.3d 1010, 1014 (10th Cir. 2010).

Slightly more difficult is the question whether the evidence supports the jury's verdict that Woerner possessed two "materials" containing child pornography. We have interpreted the term "material," which is not defined in 18 U.S.C. § 2252A(a)(5)(B), to denote a medium containing images of child pornography. *See Planck*, 493 F.3d at 503. This child pornography prosecution is different than most because the physical media purportedly containing child pornography—the computer and the flash drive—were never entered into evidence. The computer was suppressed as a fruit of the unlawful July 12 search, and the flash drive, which was seized during the lawful July 30 search, has not been shown by the parties to have been entered into evidence.

However, even though the government did not enter into evidence Woerner's home computer, the jury had ample evidence from which to infer that

the computer was a "material that contained images of child pornography" that Woerner knowingly possessed.  It is reasonable to infer from the extensive collection of child pornography found on Woerner's fantastikaktion and Gigatribe accounts that he stored at least some of his files on his home computer: witnesses testified he possessed and used this computer, and the IP address linked to the fantastikaktion and Gigatribe accounts was registered to the Ash street property where this computer was located and where Woerner alone resided.  Similarly, while the government apparently did not enter into evidence the flash drive, the jury could have reasonably inferred that it was a "material that contained images of child pornography" that Woerner knowingly possessed, in light of J.L.'s testimony that Woerner possessed it and it contained child pornography, Woerner's admission that bringing it to flight school might get them both in trouble, and the considerable evidence that Woerner knowingly possessed and distributed child pornography on a large scale.

Having found that the evidence adduced at trial was sufficient to support the jury's verdict that Woerner possessed two or more separate materials and the images contained therein were obtained through separate transactions, we conclude that Counts One and Two are not multiplicitous.

### B.    Multiplicity Challenge to Distribution Counts

The indictment charges Woerner, in Counts Three, Four, and Five, with "knowingly distribut[ing] any visual depiction . . . involv[ing] the use of a minor engaged in sexually explicit conduct," in violation of 18 U.S.C. § 2252(a)(2). The unit of prosecution for § 2252(a)(2) is each transaction in which one or more depictions of a minor engaged in sexually explicit conduct are distributed. *See United States v. Pires*, 642 F.3d 1, 16 (1st Cir. 2011); *United States v. Polouizzi*, 564 F.3d 142, 158 (2d Cir. 2009); *see also Reedy*, 304 F.3d at 365–68 (holding that a person cannot be charged more than once for images received or distributed in the same transaction).

No. 11-41380

Under that standard, Counts Three, Four, and Five are not multiplicitous because they involve three separate transactions in which multiple visual depictions were distributed: (1) the April 14, 2010 transaction in which Detective Uhlir downloaded approximately 11 videos and images from Woerner's shared folder on Gigatribe, (2) the May 14, 2010 transaction in which Special Agent Couch downloaded 8 videos and 170 images from the same account, and (3) the 65 emails sent between January 10 and July 2, 2010 from Woerner's fantastikaktion account containing, in total, more than 90 videos and 1300 images of child pornography. *See Pires*, 642 F.3d at 16; *Polouizzi*, 564 F.3d at 158.

## CONCLUSION

For the foregoing reasons, we AFFIRM.