GRAVES, Circuit Judge,
dissenting.
After a ramp check at the Midland airport and a more-than-six-hour detainment, during which time a canine failed to alert on any presence of narcotics on either the airplane or luggage, officers obtained a search warrant and found marijuana in a cardboard box behind the rear seat. The district court denied Matthew Joseph Mas-si’s motion to suppress, finding that no constitutional violation had occurred and, alternatively, that a good faith exception to the exclusionary rule applies. The majority concludes that there was a constitutional violation, but affirms the denial of the motion to suppress by extending the good faith exception beyond that for which it was intended. I disagree and would conclude that the evidence should be suppressed because the duration and circumstances of Massi’s prolonged detention transformed into a de facto arrest without probable cause. Further, I would conclude that the good faith exception is not applicable. Because I would reverse the district court’s denial of Massi’s motion to suppress, I respectfully dissent.
Massi asserts that he was illegally detained at the airport and that his detainment was unconstitutionally prolonged without probable cause. He does not argue that the ramp check itself was illegal, but asserts that he and the pilot should have been free to leave as soon as authorities checked the documents. He further asserts that his “prolonged seizure” exceeded the parameters of an investigative stop, resulting in an illegal arrest. Therefore, Massi asserts that all of the evidence seized by the authorities pursuant to the warrant should have been suppressed as the fruit of the poisonous tree.
The Government asserts that Massi was validly detained for a ramp check and a Terry stop, and that the detention did not become an arrest until a search warrant was issued and contraband was found. Alternatively, the Government asserts that the evidence obtained pursuant to the search would still be admissible under the good faith exception to the exclusionary rule.
The majority concludes that sufficient reasonable suspicion existed to justify an investigatory stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which allowed the investigation to continue beyond the ramp check. Specifically, the majority says that:
[T]he obligation to submit to a ramp check allowed the airplane and Massi to be held at the airport initially. The law enforcement officers then had a proper basis to continue the encounter beyond the regulatory ramp check under the reasonable suspicion standard in Terry, even if the facts giving rise to suspicion *533 were known prior to law enforcement contact with Massi.
I agree that there was sufficient reasonable suspicion to justify a Terry stop, but I disagree with this statement because there was no justification for the stop to continue beyond the initial ramp check and investigatory stop. I also disagree with any suggestion that facts known prior to law enforcement contact with a defendant not only allow a Terry stop, but also provide a basis for the stop to continue.
Investigative detention must last “no longer than required to effect the purpose of the stop.” United States v. Jenson, 462 F.3d 399, 404 (5th Cir.2006). “Once the purpose of a valid [Terry ] stop has been completed and an officer’s initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articu-lable facts.” United States v. Estrada, 459 F.3d 627, 631 (5th Cir.2006) (emphasis added); United States v. Machuca-Barrera, 261 F.3d 425, 432 n. 21 (5th Cir.2001) (stating that questioning unrelated to the justification for a stop that extends the stop’s duration violates the Fourth Amendment). Articulable suspicion means more than a hunch. Terry, 392 U.S. at 21-22, 88 S.Ct. 1868. This court has considered Terry principles in the ramp check context. See, e.g., United States v. Zukas, 843 F.2d 179, 181-83 (5th Cir.1988). An arrest has occurred if, “in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). A person is seized when, “by means of physical force or a show of authority, his freedom of movement is restrained.” Id. at 553, 100 S.Ct. 1870. Even short of an arrest, a person’s “liberty interest in proceeding with his itinerary” may be “effectively restrained]” if his personalty is detained for investigation. United States v. Place, 462 U.S. 696, 708, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).
In this situation, the ramp check and the Terry stop coincided. The majority concedes that the reasonable suspicion came from information received from the Air Marine Operations Center (AMOC). This was prior to and the basis for the ramp check, which was the investigatory stop. Upon the completion of the ramp check/ Terry stop, there was no additional reasonable suspicion to justify the extension of the stop. See United States v. Brigham, 382 F.3d 500, 506-07 (5th Cir.2004) (emphasis added). At that point, the detention should have ended. See Estrada, 459 F.3d at 631. The paperwork was in order and the authorities had no articula-ble suspicion of any illegal activity. But Massi and the pilot were already being detained and were not free to leave. The authorities then asked for and were denied consent to search and the canine failed to alert, further indicating that any suspicions had been dispelled.[1] That is the second point at which the detention should have ended.
There is nothing in the record to establish the existence of any evidence of crimi *534 nal activity. There is also nothing in the record to indicate that authorities had anything more than a hunch that the men were involved in criminal activity. A hunch does not create articulable suspicion. Terry, 392 U.S. at 21-22, 88 S.Ct. 1868. There is nothing in the record to indicate that authorities asked the men about the flight activity, which authorities later deemed “suspicious,” why they spent only 12 hours in Las Vegas, or about the purpose of Massi’s recent visit to Tijuana. Although Tijuana may be “a known center of drug activity,” obviously, it is not illegal to visit Tijuana. The record further indicates that evidence of “suspicious” flight activity was not conveyed by AMOC to authorities until after the ramp cheek and investigatory stop had been completed. Agent Josh Howard, criminal investigator for U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), testified that AMOC initially requested a ramp check and informed Midland Police that the registered owner of the aircraft had a prior narcotics-related conviction. With regard to the flight activity, Howard testified: “Honestly, I don’t recall if they told me exactly what was going on at the time, but I did— I did corroborate the information.” Howard also testified that much of his corroboration was done when he was back at his office writing the search warrant affidavit several hours later.
Notwithstanding the likelihood of the stop turning into a de facto arrest at an earlier point in time, the majority ultimately concludes that Massi’s investigatory stop turned into a de facto arrest without probable cause at some point after Howard’s arrival on the scene. See United States v. Zavala, 541 F.3d 562, 574 (5th Cir.2008). In analyzing probable cause for an arrest, the majority states that the “facts and circumstances known to law enforcement by the time of Agent Howard’s 7:30 p.m. arrival were all that was known until the midnight search of the plane.” But, as set out above, the record indicates that some of that information was likely obtained after Howard arrived and after he returned to his office. Nevertheless, the majority concludes that until the midnight search, the officers only had suspicions and not probable cause for an arrest. However, after concluding that Massi was subjected to an unconstitutional arrest at the airport, the majority then opines that the evidence obtained pursuant to that unconstitutional arrest should not be suppressed as the fruit of the poisonous tree under the good faith exception.
As stated by the majority, the good faith exception provides that “evidence obtained during the execution of a warrant later determined to be deficient is nonetheless admissible if the executing officer’s reb-anee on the warrant was objectively reasonable and made in good faith.” United States v. Woerner, 709 F.3d 527, 533 (5th Cir.2013). The exception involves a judicial determination that exclusion of the evidence does not advance the interest of deterring unlawful police conduct. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1994). The good faith exception limits exclusion where “the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.” Leon, 468 U.S. at 922, 104 S.Ct. 3405. The good faith exception does not apply:
(1) when the issuing magistrate was misled by information in an affidavit that the affiant knew or reasonably should have known was false; (2) when the issuing magistrate wholly abandoned his judicial role; (3) when the warrant affidavit is so lacking in indicia of probable cause as to render official belief in *535 its existence unreasonable; and (4) when the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid.
Woerner, 709 F.3d at 534 (citing Leon, 468 U.S. at 923, 104 S.Ct. 3405).
The majority characterizes the question here as whether the exception permits the admissibility of evidence over a “possible taint” caused by the Fourth Amendment violation that would otherwise be excluded as fruit of the poisonous tree. The majority indicates that it says “ ‘possible taint’ because there is not a clear causal connection between the unconstitutional detention and the acquisition of evidence used to support the search warrant.” But clearly there is a causal connection between the unconstitutional detention and the evidence obtained in the search since officers would not have been able to conduct the search absent the unconstitutional detention. The authorities not only detained Massi and the pilot, but also their documents, luggage, and airplane. Further, as stated above, there is evidence that all of the information used in the warrant was not acquired prior to the detention, as the majority concedes.
The majority acknowledges that Woer-ner is factually distinguishable, but says that it “signals an openness to applying the good faith exception where an earlier-in-time constitutional violation exists alongside a search warrant that was sought and executed in good faith.” Woer-ner involved two separate investigations of online activity by two separate agencies and two separate search warrants. As the majority acknowledges, [b]oth the interrogation and unlawful search were undertaken by a different law enforcement entity than that of the officers who pursued the search warrant at issue; the two investigations were parallel and the officers seeking the search warrant did not know of the other. The majority says that, in Woer-ner, this court concluded that suppression was not justified and that the good faith exception applied. While that statement is not inaccurate, a more fulsome discussion of Woemer is warranted.
On July 12, 2010, the Los Fresnos Police Department (LFPD) executed an expired search warrant on Woerner’s residence and seized evidence of possession of child pornography. The warrant came as a result of a profile Woerner had posted on the file-sharing network Gigatribe and files he had shared with a detective in Illinois on April 14, 2010. That detective traced the Internet Protocol (IP) address and reported the matter to LFPD. During the same time period, the Federal Bureau of Investigation (FBI) was conducting a separate, unknown undercover operation on Giga-tribe and accessed child pornography from the same IP address on May 14, 2010. As a result, the FBI applied for and received a search warrant for Woerner’s residence. On July 13, 2010, FBI agents were preparing to execute this warrant when LFPD informed them of the earlier search and arrest. The FBI proceeded with the search and seized film, videos, tapes, and magazines. The following day, the FBI interrogated Woerner and subsequently took over the investigation, which involved subsequent searches, including a search of an email account (the fantastikaktion account).
Prior to trial, Woerner moved to suppress evidence. The district court found, in part, that the good faith exception did not apply and suppressed all of the evidence seized from Woerner’s home by the LFPD pursuant to an expired search warrant and the subsequent statements that he made to the FBI in the parallel investigation on the grounds that the “evidence *536 was seized pursuant to, and his statements were tainted by, the unlawful July 12 search of his home.” Woerner, 709 at 533. However, the district court did not suppress evidence derived from the FBI’s interview of a victim and his family or later search of Woerner’s residence or fantasti-kaktion account, concluding that the evidence fell within the good faith exception to the exclusionary rule. Id.
Woerner appealed, arguing, in part, that the emails from the fantastikaktion account should have been suppressed because the later warrant was supported by evidence obtained through the earlier unlawful search. This court affirmed the district court’s application of the good faith exception in denying the suppression of only this later evidence obtained through a later warrant based, in part, on statements Woerner had made during the custodial interrogation linking his possession of child pornography to the fantastikaktion account. In doing so, this court said:
We decline to announce a categorical rule governing this situation, following Leon’s guidance that “suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.” ... We note that the purpose of the exclusionary rule — deterring future Fourth Amendment violations — would be served, in some cases, by suppressing evidence seized pursuant to a warrant supported by evidence obtained through an unlawful search.... For example, if the officer applying for the warrant knew or had reason to know that the information was tainted and included it anyway without full disclosure and explanation, then suppressing the evidence seized pursuant to that warrant “pay[s] its way by deterring official lawlessness.”
Woerner, 709 F.3d at 534. (Internal citations omitted).
Based on Woemer, the evidence here should clearly be suppressed. Howard and his agency were involved in this investigation the entire time and he knew exactly what had occurred. This is akin to the first warrant in Woemer in which the evidence was suppressed and the good faith exception did not apply. As established previously herein, Howard’s reliance on the warrant was not objectively reasonable or made in good faith. Howard’s affidavit to the warrant was misleading in that it fails to disclose that the investigation began at approximately 6 p.m. and Massi had been detained for more than an hour prior to 7:30 p.m., which is the time Howard states that he received initial information. Howard testified during the suppression hearing that Midland Police were contacted at 6 p.m. and his agency was brought into the investigation at approximately 6:20 p.m. Although Howard did not arrive on the scene until approximately 7:30 p.m. because he had been at a personal function, other agents were already on the scene and Howard had already spoken to another agent and AMOC prior to his arrival. Not only does Howard’s affidavit for the warrant not contain relevant information regarding the time period of the investigation or of the unconstitutional arrest, but it also fails to state what information was actually known prior to the investigatory stop or what information was obtained after the unconstitutional arrest had already occurred. Because he knew what had occurred, Howard could not rely in good faith on the warrant’s validity.
Further, even with the omissions and misleading information, the warrant is lacking in indicia of probable cause and fails to particularize the things to be *537 searched. The affidavit contains generalized statements regarding drug trafficking and the common practices of traffickers, and a general list of items to be seized, i.e., “all evidence, fruits and instrumentalities pertaining to violations of Title 21 United States Code, Sections 841.... ” There is very little specific information in the affidavit other than things such as: some of the flight information; the denial of consent to search; the observation of a “cardboard box approximately 18 to 24 inches across” behind the rear seat and the discussion regarding the box; that Massi crossed from Tijuana three days before;[2] that the registered owner of the aircraft is Vernon Tynes and that he had a cocaine trafficking offense in 1992; and conclusory statements, such as “[t]his flight requires approximately 6 refuelings.”
The majority concedes that an “unconstitutional seizure” occurred. As a direct result of that constitutional violation, authorities obtained a search warrant and tainted evidence. Exclusion of that tainted evidence would certainly advance the interest of deterring unlawful police conduct in the form of detaining a person for more than six hours without probable cause in an attempt to pursue an investigation to develop probable cause. Because the benefits produced by suppressing the evidence here are not merely marginal or nonexistent and do justify the costs of exclusion, the good faith exception does not apply. Leon, 468 U.S. at 922, 104 S.Ct. 3405.
Notwithstanding that I would find that the good faith exception does not apply under Woemer and Leon, I will address the other cases cited by the majority from the Sixth, Second and Eight Circuits. What is clear, as the majority acknowledges, is that these other circuits have only applied the exception in limited circumstances, none of which exist here.
The majority finds United States v. McClain, 444 F.3d 556 (6th Cir.2005), to be most persuasive. But a careful examination of the facts in McClain undermines its persuasiveness. The initial entry into the house based on the erroneous belief by the police of possible criminal activity did not uncover any marijuana plants. In the initial entry, officers discovered inward-facing reflective paper on the windows in the basement, a large amount of electrical wiring connected to a junction box, what appeared to be plant stimulators, and some boxes marked “grow lights.” Officers did not see any marijuana in the house, but concluded that a grow house was being set up. McClain, 444 F.3d at 560. Following the entry, officers informed their supervisor, who contacted Officer Brian Murphy of the Sumner County Drug Task Force. Murphy then began an investigation that lasted approximately six weeks and involved surveillance of the house and several other properties. Murphy eventually obtained warrants to search the house and five other properties. The warrant affidavit relied in part on evidence obtained during the initial warrantless search. During that search, authorities recovered 348 marijuana plants and growing equipment from the house. Id. The district court granted the defendants’ motions to suppress, finding that the warrantless entry and search of the house violated the Fourth Amendment and that the good faith exception of the exclusionary rule did not apply. The government appealed, and the Sixth Circuit reversed.
The question before the Sixth Circuit was whether the good faith exception can apply in a situation in which the affidavit *538 for the warrant is tainted by evidence obtained in violation of the Fourth Amendment. The court concluded that McClain was “one of those unique cases in which the Leon good faith exception should apply despite an earlier Fourth Amendment violation.” McClain, 444 F.3d at 565. The court relied on United States v. White, 890 F.2d 1413, 1419 (8th Cir.1989), for the proposition that “the facts surrounding the initial Fourth Amendment violation were ‘close enough to the line of validity to make the officer’s belief in the validity of the warrant objectively reasonable.’ ” McClain, 444 F.3d at 566. Specifically, the court said:
[W]e do not believe that the officers were objectively unreasonable in suspecting that criminal activity was occurring inside McClain’s home, and we find no evidence that the officers knew they were violating the Fourth Amendment by performing a protective sweep of the home. More importantly, the officers who sought and executed the search warrants were not the same officers who performed the initial warrantless search, and Officer Murphy’s warrant affidavit fully disclosed to a neutral and detached magistrate the circumstances surrounding the initial warrantless search.
Id. (Emphasis added). The court then found that:
Because the officers who sought and executed the search warrants acted with good faith, and because the facts surrounding the initial warrantless search were close enough to the line of validity to make the executing officers’ belief in the validity of the search warrants objectively reasonable, we conclude that despite the Fourth Amendment violation, the Leon exception bars application of the exclusionary rule in this case.
Id. (Emphasis added).
Based on McClain, the majority adopts the reasoning that two requirements must be met for the good faith exception to apply to evidence obtained as the result of the execution of a search warrant. The requirements adopted by the majority are:
(1) the prior law enforcement conduct that uncovered evidence used in the affidavit for the warrant must be “close enough to the line of validity” that an objectively reasonable officer preparing the affidavit or executing the warrant would believe that the information supporting the warrant was not tainted by unconstitutional conduct, and (2) the resulting search warrant must have been sought and executed by a law enforcement officer in good faith as prescribed by Leon.
However, as set out above, that is not exactly what the Sixth Circuit said. Also, one glaring omission in the majority’s newly-adopted reasoning involves the “more” important factor that the Sixth Circuit considered and I quoted above that, “the officers who sought and executed the search warrants were not the same officers who performed the initial warrantless search.” McClain, 444 F.3d at 566. Despite that, the majority sees no basis for including this one requirement found to be of significant importance by the other circuits it cites. Instead, the majority says that, “[i]t is not awareness of the existence of the conduct that later is found to be improper that is important, but it is awareness at the time of presenting the affidavit that the conduct violated constitutional rights that would affect the application of the good-faith exception.” Yet, the majority fails to reconcile that statement with its own finding that the prior police conduct was unconstitutional.
In this case, the officer who sought and executed the search warrant also participated in the unconstitutional arrest. Detaining someone for hours until it turns *539 into a de facto arrest without probable cause is not close enough to the line of validity to make any possible belief Howard had in the validity of the search warrant objectively reasonable. The majority dismisses Howard’s statements indicating he did not learn some necessary facts until after the unconstitutional arrest and cites United States v. Michelletti 13 F.3d 838 (5th Cir.1994) as support. However, the portion of Michelletti quoted by the majority addresses the general standard for upholding the district court’s ruling to deny a motion to suppress. Id. at 841. Here, the majority has already held that the district court erred in finding the unconstitutional detention to be constitutional and is merely determining the application of a good faith exception. Michelletti provides no authority for the application of a good faith exception.
The majority cites the Eighth Circuit case of United States v. Fletcher, 91 F.3d 48, 51-52 (8th Cir.1996), for the proposition that the Leon exception was applicable to a subsequent warrant-authorized search of luggage despite the initial Fourth Amendment violation. In that case, upon his arrival at his destination, Fletcher’s bag was delayed by the airline because of his last minute ticket purchase. Fletcher left the airport and returned at a later time to retrieve his bag. For various reasons, officers grew suspicious of Fletcher upon his initial arrival and began an investigation. Upon Fletcher’s return to the airport to retrieve his bag, officers approached him and began a conversation, during which Fletcher gave some contradictory statements. Officers asked Fletcher for permission to search his bag. Fletcher consented and then withdrew the consent. Officers then told Fletcher he was free to leave but that his bag would be detained for a dog sniff. The dog was brought in and alerted on the bag. Officers then obtained a search warrant and methamphetamine was discovered in the bag. The district court held that the officers did not have reasonable articulable suspicion of criminal activity and that the detention violated the Fourth Amendment, but suppression was not warranted because the, facts were “close enough to the line of validity to make the officers’ belief in the validity of the detention and the validity of the search warrant objectively reasonable.” Fletcher, 91 F.3d at 50. Though factually distinguishable, a key point the Eighth Circuit made was that “officers collected information to corroborate their suspicions before approaching Fletcher by conducting additional surveillance and checking police records.” Id. at 52. (Emphasis added).
Here, officers did not corroborate their suspicions or check police records before approaching Massi. Instead, officers corroborated their suspicions after they illegally detained Massi. The process of “corroborating” information is typically part of the investigative process. Further, officers did not conduct any additional surveillance.
The majority also cites United States v. Thomas, 757 F.2d 1359, 1368 (2d Cir.1985), for the Second Circuit’s finding that Leon was applicable to a search of an apartment where the affidavit in support of the warrant contained evidence in violation of the Fourth Amendment. Again, this case is factually distinguishable as it involved a canine sniff outside a defendant’s apartment that indicated the presence of narcotics and was used as probable cause to obtain a search warrant. The search was part of an investigation that spanned a period of nine years and involved nine undercover investigations. In any event, the Second Circuit found that, because the magistrate concluded that the canine sniff could form the basis for probable cause to search the apartment, there was nothing *540 more the officer could have or should have done to insure that his search would be legal. Thus the good faith exception applied. Specifically, the court said: “The magistrate, whose duty it is to interpret the law, determined that the canine sniff could form the basis for probable cause; it was reasonable for the officer to rely on this determination.” Thomas, 757 F.2d at 1368. That is clearly distinguishable from this case.
Further, there are Second, Eighth, Ninth and Eleventh Circuit cases that have held that the good faith exception does not apply where a search warrant was issued on the basis of tainted evidence. See United States v. Reilly, 76 F.3d 1271, 1281-82 (2d Cir.1996) (holding Leon inapplicable where officers failed to disclose in warrant affidavit the circumstances involved in a pre-warrant search; “Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble.”); United States v. O’Neal, 17 F.3d 239, 243 n. 6 (8th Cir.1994) (issuance of search warrant could not sanitize prior illegal conduct in obtaining supporting evidence as it would not be a deterrent); United States v. McGough, 412 F.3d 1232, 1239-40 (11th Cir.2005) (good faith exception does not apply where a search warrant is issued on the basis of evidence obtained as the result of an illegal search); and United States v. Vasey, 834 F.2d 782, 789-90 (9th Cir.1987) (magistrate’s issuance of warrant based on tainted evidence does not sanitize the taint).
The majority admits that Massi’s constitutional rights were violated when he was detained while the affidavit was prepared and search warrant issued, but says, in effect, that the prolonged detention by Howard was close enough to the line of validity that Howard would believe in the validity of the illegal detention. I disagree.
For the reasons stated herein, I would hold that the good faith exception does not apply. Because I would reverse the district court’s denial of Massi’s motion to suppress, I respectfully dissent.

. I note that, while Massi did attempt to close the door of the airplane after denying consent to search, the door was actually closed by a law enforcement officer. The majority also refers to "Massi’s inconsistent statements as to his knowledge and ownership of the box.” Actually, Howard’s affidavit states, and testimony supports, that Agent Knight asked Mas-si who the box belonged to and he responded: "I don’t know what you are talking about.” Knight asked Massi again and Massi said: "I don’t know of any boxes.” Knight then clarified that the reference was to the box the pilot saw him put in the plane and Massi admitted ”[t]he box is mine.”

. I note that the affidavit states that "[qlueries of government databases revealed Massi crossed from Tijuana, Baha California, Mexico to San Ysidro on May 13, 2012.”