# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-KA-00655-SCT

*DEDDRICK LASHUN MORRIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/20/1998 |
| TRIAL JUDGE: | HON. GEORGE B. READY |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WANDA ABIOTO |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | ROBERT L. WILLIAMS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 09/30/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/21/99 |

**BEFORE SULLIVAN, P.J., BANKS AND WALLER, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Deddrick Morris was indicted on November 25, 1996, for two counts of aggravated assault upon a law enforcement officer, arising out of a car chase in DeSoto County on May 21, 1996. Morris was charged under then applicable Miss. Code Ann. § 97-3-7(2)(a) (1994), for swerving his vehicle at a patrol car occupied by two sheriff's deputies. The jury found him guilty on both counts, and he was sentenced to ten years in the custody of the Mississippi Department of Corrections for each count. Five years of the first sentence and all ten years of the second sentence were suspended pending his good behavior, and the second sentence was ordered to run consecutively with the first sentence.

¶2. Morris appealed to this Court, assigning as error the misinterpretation of the elements of the charge against him in the indictment and jury instructions, the refusal of defense instructions on self-defense and intent, the improper admission of opinion testimony, ineffective assistance of counsel at trial, improper closing argument by the State, the insufficiency of the evidence against him, and the trial court's refusal to hear testimony on mitigating and extenuating circumstances at the sentencing hearing. We find that the trial court misconstrued the elements of attempted aggravated assault throughout Morris's trial. As a result, we must reverse Morris's convictions and sentences and remand this case to the DeSoto County Circuit Court

for a new trial. On remand, we also caution the trial court against allowing opinion testimony regarding the defendant's intent. Finding these dispositive issues to require reversal, we decline to address the other errors asserted by Morris in his appeal.

## STATEMENT OF THE FACTS

¶3. Deddrick Morris traveled from Memphis, Tennessee, to Tunica, Mississippi, on May 21, 1996, with several other people, including his friend Tony Hopkins. While there, Hopkins got into an argument leading to the exchange of gunfire. Fearing for his life, Morris hopped into a brown sedan and drove away from the shooting. He headed north down Old U.S. Highway 61 and was pursued by Tunica County Sheriff's Department Assistant Chief Michael Hardy and Tunica County Sheriff's Deputy Marvin Hargrow. The officers testified that Morris drove recklessly-speeding, running through stop signs and red lights, making illegal passes, and running several cars off the road.

¶4. DeSoto County Sheriff's Deputies James Grimm and Scott Johnson picked up the chase once Morris turned east onto Star Landing Road. The officers testified that at least three times Morris attempted to prevent Deputies Grimm and Johnson from passing him by swerving toward their car to force the officers' car off the road. Deputies Grimm and Johnson testified that, in their opinion, Morris was intentionally swerving his car toward theirs. Morris's car never made contact with the officers' car, and the officers avoided being forced completely off the road by slowing down. After Morris swerved a third time, preventing the pursuing officers from overtaking him, Deputy Johnson shot out his rear tires in an attempt to stop the vehicle.

¶5. Morris stated that he did not stop for the officers, because he was afraid he was going to be killed and wanted to get to an area with more people before pulling over. He also testified that he had suffered gunshot wounds to his shoulder and near his eye, causing blood to get in his eyes, so that he could not see well. Morris said that he was ducking down in the seat to avoid being shot, because bullets were flying through the windows of the car, and the tires were shot out. Morris maintained that these factors caused his driving to be impaired and that he never intended to injure anyone or to run the officers off the road.

¶6. Morris was captured after turning onto Highway 61 North, when a road grader pulled across the road to block him. The officers exited their vehicle and ordered the occupants of Morris's car to get out, but Morris drove off again around the road grader. The officers shot out Morris's front tires and were finally able to block him in with their vehicles.

¶7. Morris was charged and convicted of two counts of attempted aggravated assault upon a law enforcement officer under Miss. Code Ann. § 97-3-7(2)(a), for swerving his car toward Officers Grimm and Johnson's patrol car. Circuit Court Judge George B. Ready sentenced Morris to ten years on the first count with the last five years suspended pending good behavior. On the second count, Judge Ready gave Morris a ten-year suspended sentence pending good behavior, to run consecutively to the sentence in the first count.

## STATEMENT OF THE LAW

### I.

### MISINTERPRETATION OF THE ELEMENTS OF THE CHARGE

¶8. The indictment and jury instructions in this case misconstrued the elements of attempted aggravated assault. Morris did not object at trial to the indictment or instructions on the elements of the charge. However, he did offer Instructions D-2 and D-3, which required the jury to find Morris not guilty if they found that he did not intend to cause bodily injury to the officers. The trial court denied the instructions, finding that Morris need not have had any intent, because it was a case of "reckless disregard." We find that Morris adequately preserved this error for appeal by filing his own instructions on the element of intent.

¶9. Morris was charged under Miss. Code Ann. § 97-3-7(2)(a), which stated in pertinent part, "A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life . . ." Miss. Code Ann. § 97-3-7(2)(a) (1994).[1] Counts 1 and 2 of Morris's indictment charged that he "did wilfully, unlawfully and feloniously, purposely, knowingly or *recklessly*, under circumstances manifesting extreme indifference to the value of human life, *attempt* to cause bodily injury" to James Grimm and Scott Johnson by swerving his car at their patrol car. (emphasis added). Similarly, the jury instructions on the elements of attempted aggravated assault, Instructions 9 and 10, included the "purposely, knowingly or *recklessly attempt*" language.

¶10. In ***Harris v. State***, 642 So. 2d 1325, 1327-28 (Miss. 1994), we warned the bench and bar against use of the "recklessly attempt" language in jury instructions and indictments defining the elements of aggravated assault. The defendant in that case was charged with aggravated assault after running into an officer with a pick-up truck and attempting to run over him as he lay on the ground. ***Harris***, 642 So. 2d at 1325. We stated:

> As can be readily seen, one violates the statute by simply attempting to cause serious bodily injury. One also violates the statute when one causes serious bodily injury either intentionally or "recklessly under circumstances manifesting extreme indifference to the value of human life." The indictment mixes the concept of attempt which, as noted hereinabove, embraces the element of intent, with the concept of actually causing injury through recklessness, which requires no specific intent. The indictment goes on to specify the exact conduct charged and, therefore, standing alone, is salvageable.

> The jury instructions were drafted in conformity with the indictment, however, and contained the phrase "recklessly attempt." This phrase was, in turn, used as a spring board for the prosecutor to argue that the jury need not find an intent to run over Lee in order to find Harris guilty of attempting to run him over. An objection to that argument was erroneously overruled.

> Many courts have recognized "'intentional' and 'reckless' are inconsistent terms." . . .

> Those terms are mutually exclusive when applied to the statute here in question. Miss. Code Ann. 1972 § 97-3-7(2) (Supp. 1991). The indictment, instruction and argument were erroneous.

***Id***. at 1327-28.

¶11. "The crime of attempt consists of three elements: 1) an intent to commit a particular crime, 2) a direct ineffectual act done toward its commission, and 3) failure to consummate its commission. ***Edwards v. State***, 500 So. 2d 967, 969 (Miss. 1986)." ***Harris***, 642 So. 2d at 1327. As we explained in ***Harris***, the definition of attempt precludes its application to the portion of the aggravated assault statute defining aggravated assault as causing serious bodily injury to another "recklessly under circumstances manifesting

extreme indifference to the value of human life," because one may not act intentionally and recklessly at the same time. *Id*. at 1328. We went on to affirm Harris's conviction and sentence, however, because he failed to object to the indictment and instruction at trial, and did not raise the issue in his appeal. *Id*. at 1328.

¶12. The indictment and instructions in the present case mirror the erroneous indictment and instruction in *Harris*. As distinguished from *Harris*, we find that in this case Morris preserved the error for appeal by offering his own instructions defining the required element of intent and by raising the issue on appeal.

¶13. The State attempts to distinguish *Harris* on the fact that the instant case was an attempt case, whereas in *Harris*, the defendant actually struck the officer with his vehicle. The distinction is irrelevant, because the careful analysis of the aggravated assault statute, particularly the inconsistency in the terms "reckless" and "intentional," in *Harris* is applicable to the current case.

¶14. The undisputed evidence in this case showed that Morris at least acted recklessly during the high speed chase. What is disputed is whether he intended to harm the officers when his vehicle swerved toward their patrol car. Reasonable minds could have differed on the issue, because the officers testified that in their opinion Morris intentionally swerved his vehicle toward theirs, whereas Morris testified that he had no intent to harm anyone. Determining which testimony was credible was completely within the jury's purview. *Swington v. State*, No. 97-KA-00591-SCT, 1999 WL 396435, *3 (Miss. Jun. 17, 1999). However, the jury was not even properly instructed that it had to find the element of intent, so we cannot know what the verdict would have been had the trial court given a proper instruction on the elements of attempted aggravated assault.

¶15. Based upon the holding in *Harris*, we find that the entire trial in this case erroneously turned on an improper interpretation of the elements of attempted aggravated assault. The indictment and jury instructions incorrectly listed the elements of the charge in this case. The questioning at trial and the prosecutor's closing argument tracked that improper interpretation of the law, focusing on reckless rather than intentional conduct. This resulted in the denial of due process, requiring reversal in this case.

## II.

### OPINION TESTIMONY BY OFFICERS

¶16. Over Morris's objection, Officers Grimm and Johnson were allowed to offer their opinion that Morris intended to run the officers off the road when he swerved his vehicle at their patrol car. Rule 701 of the Mississippi Rules of Evidence governs opinion testimony by lay witnesses.

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue.

Miss. R. Evid. 701.

¶17. A proper lay opinion could be offered as to whether Morris appeared to deliberately or involuntarily swerve his vehicle. As Judge Ready determined, the question only called for a "common-sense observance." However, the prosecutor's request for the officers' opinions as to whether Morris had the intent to run them off the road or to cause them injury went beyond the purview of Rule 701's requirement that the opinion must be "rationally based on the perception of the witness." One may not perceive the intent

behind another person's actions. "Unless one expresses his intent, the only method by which intent may be proven is by showing the acts of the person involved at the time in question, and by showing the circumstances surrounding the incident." ***Wheat v. State***, 420 So. 2d 229, 239 (Miss. 1982) (*quoting* ***Thompson v. State***, 258 So. 2d 448, 448 (Miss. 1972)). We have stated:

> The intention of a party is a fact determination to be made by the jury from the evidence. In arriving at this determination it has the duty to consider the testimony concerning the assault, the surrounding circumstances, including the expressions made by the participants. To permit comment on the subjective intentions of an accused by a witness based on conclusions reached from his observation invades the province of the fact finders. The issue of intent must be decided by the jury from the evidence in the case and not the conclusions of others.

*Garrison v. State*, 726 So. 2d 1144, 1150-51 (Miss. 1998) (*quoting* ***Newell v. State***, 308 So. 2d 71, 73 (Miss. 1975)). *See also* ***Shive v. State***, 507 So. 2d 898, 900 (Miss. 1987); ***Billiot v. State***, 454 So. 2d 445, 463 (Miss. 1984); ***Williams v. State***, 317 So. 2d 425, 427 (Miss. 1975); ***Shanklin v. State***, 290 So. 2d 625, 627 (Miss. 1974). On remand, the trial court should not allow opinion testimony relative to Morris's intended result from swerving his vehicle toward the patrol car.

## CONCLUSION

¶18. Because the indictment and jury instructions contained the erroneous "recklessly attempted" language proscribed by our opinion in ***Harris***, we find that Morris's fundamental right to due process was violated. As a result, we must reverse Morris's convictions and sentences on the two counts of aggravated assault and remand this case to the DeSoto County Circuit Court for a new trial. On remand, we caution the trial court to avoid opinion testimony regarding what Morris intended when he swerved his car. The judgment of the DeSoto County Circuit Court is reversed, and this case is remanded to that court for a new trial.

¶19. **REVERSED AND REMANDED.**

> **PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE AND WALLER, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS AND COBB, JJ.**

> **SMITH, JUSTICE, DISSENTING:**

¶20. I respectfully dissent. First, the issue of intent is procedurally barred for failure to object. The majority writes that Morris's tendered defense instructions cure procedural the bar for his failure to object and preserves the issue for appeal. In reversing, the majority fails to apply this Court's plain error rule. *See Sanders v. State*, 678 So. 2d 663, 670 (Miss. 1996); ***Walker v. State***, 671 So. 2d 581, 606 (Miss. 1995); Also in the very case now relied upon by the majority, the Court, declined to apply our plain error rule on this very issue in ***Harris v. State***, 642 So. 2d 1325, 1327-28 (Miss. 1994). While ***Harris*** may be on point in the case at bar as to intent, the fact remains that apparently neither the trial court, the State nor the defense was aware of the decision. Morris was clearly confusing reckless attempt and intermingling that term with intent. In fact, close examination of Instruction D-1, tendered at trial by Morris, reveals that the instruction contains the very same "recklessly attempted" language to which Morris now objects on appeal. The majority, at a minimum, should apply our plain error rule in order to reverse. I would apply the procedural bar, as in ***Harris.***

¶21. In my view, critical facts were also omitted by the majority. I write further to include these facts which I believe are pertinent to the issue of intent. The majority reverses and remands Deddrick Morris's conviction for two counts of aggravated assault upon a law enforcement officer which the majority opines arose from a car chase in DeSoto County on May 21, 1996. Morris had been shot twice, and he subsequently attempted to blame the officers for his gunshot wounds. In fact, the subsequent assault upon the officers had its genesis with a crap game in Tunica which ended abruptly in a shootout between the participants. Morris, during direct examination, referring to the original commencement of the shootout in Tunica, was asked by his attorney: "What were your feelings at that time? You had been shot at, or Tony and them had. They were still in the street shooting , weren't they?" Morris responded, "Yes sir. They were still in the street shooting at us. I was fearing for my life. I just took off. . . Headed home, trying to go home." Morris was asked: "Did you see the patrol, Tunica police after you, chasing you?" Morris responded, "Yes, sir. I did." Finally, Morris was asked: "Why didn't you stop?" Morris responded, "Just scared. I was scared. I was injured. My eye was injured, shoulder was injured. . . . I had an injury right here to my eye from a gunshot wound." It is clear from Morris's direct examination testimony that his initial version was that he was shot by the persons involved in the crap game who commenced the shootout with Morris's friends.

¶22. The majority fails to mention that the issue of who fired weapons first was hotly disputed at trial. Morris claimed the Tunica officers fired first. The DeSoto County officers who charged Morris with aggravated assault, testified that the occupants of Morris's car first fired weapons at the officers, whereupon, the officers shot out the rear tires of the vehicle and returned fire. The officers subsequently shot out the front tires before finally apprehending Morris and his friends. There clearly were weapons in the Morris vehicle because the record reflects that the occupants of Morris's car at some point during the high speed chase threw their weapons out of the vehicle.

¶23. Regardless, Morris clearly saw the Tunica officers, who initially "blue lighted" him. He failed to stop at the very beginning of this incident. The car chase in fact commenced there in Tunica County and ended some 30 miles north in DeSoto County. Morris claimed that blood in his eye caused him to drive in a reckless manner and that he was not intentionally trying to run the officers off the road. Yet, he somehow managed a 30-mile, high-speed (90 mph at times) chase, "blowing through" intersections and avoiding two roadblocks, the last being a motor grader blocking the road. The motor grader in fact stopped Morris momentarily, but Morris then managed to somehow maneuver around the machine and attempt to flee again, only to have the officers shoot out the two front tires along with the previously shot-out back tires.

¶24. The officers testified that in their opinion, Morris was deliberately or intentionally trying to run them off the road as they were trying to get him to stop, thereby committing an assault upon them. The majority is simply wrong regarding the restriction it places upon the testimony of the officers upon remand for a new trial.

¶25. First, Morris only objects to the officers' testimony because, in his view, they should have been qualified as experts under Miss. R. Evid. 702 prior to giving opinion testimony regarding Morris's driving and intentional attempt to commit an assault upon them. The officers' testimony was offered as lay opinion testimony under Miss. R. Evid. 701. Morris argues that *Sample v. State*, 643 So. 2d 524, 529-30 (Miss. 1994) applies. In *Sample*, an undercover narcotics agent gave lay opinion testimony regarding the street value of marijuana based on his personal experience. The Court, however, held that the trial court erred in not requiring such opinion testimony of the officer to be given as expert testimony. *Id.* at 530.

¶26. The case at bar is distinguishable. There is nothing specialized about everyday driving. The officers were not asked questions about any specialized driving abilities. The State merely asked lay opinion testimony of the officers regarding their **personal observations as eyewitnesses at the scene**. They were not asked to form an opinion based upon their experience as law enforcement officers. No expert testimony was required to form an opinion as to whether Morris was wilfully, knowingly, intentionally, or deliberately swerving his vehicle in an attempt to run the officers off the road in order to avoid arrest or apprehension, thereby attempting an aggravated assault upon them.

¶27. Driving on our roadways does not require extraordinary or specialized skill, unless one is a professional race car driver. Such of course is not the case here, although the incident may appear to share many of the same characteristics. This Court, in ***Jones v. Panola County***, 725 So. 2d 774, 779 (Miss. 1998), in allowing jurors to consider their own common experiences stated, "In the view of this Court, the jury should be able to consider the federal guidelines in the context of their own common sense, judgment, and experience in driving local roads . . . ." If jurors can consider their own personal driving experiences, surely they are entitled to hear lay opinion testimony of these officers based upon common sense perceptions and their first hand personal observations of Morris's driving at that particular moment at the scene.

¶28. Although the majority claims that on remand, "A proper lay opinion could be offered as to whether Morris appeared to deliberately or involuntarily swerve his vehicle," in the very next sentence the majority seems to totally refute that view by stating, "However, the prosecutor's request for the officers' opinions as to whether Morris had the intent to run them off the road or to cause them injury went beyond the purview of Rule 701's requirement that the opinion must be "rationally based on the perception of the witness." The question then arises: Morris deliberately swerved his vehicle in the officers' path to do what? Surely the majority is not saying that Morris can testify as he did, "I wasn't intended on hitting no officers," and yet the officers are prohibited from testifying that in their opinion, based on personal observations at the time, that Morris deliberately or intentionally swerved into their lane to run them off the road. Even the majority's authority does not support such a holding. In ***Harris v. State***, 642 So. 2d 1325 (Miss. 1994), this Court did not condemn the testimony of Sergeant Savell, who had personally observed the driving of the defendant Harris in his alleged assault upon Detective Lee. Savell testified "that it was not completely dark and that there was no reason for Harris to pull his truck into the north side of the street." ***Id.*** at 1326. Notably, Savell continued, "I don't know why he stopped, but he stopped and he **tried** to run over him again, and he **tried to run over him again deliberately**."***Id.*** (emphasis added). I agree that "[t]he only method by which intent may be proven is by showing the acts of the person involved at the time in question, and by showing the circumstances surrounding the incident." ***Wheat v. State***, 420 So. 2d 229, 239 (Miss. 1982), (*quoting **Thompson v. State***, 258 So. 2d 448, 448 (Miss. 1972)). That is exactly what the officers were attempting to show by their testimony.

¶29. The majority, however, is merely engaging in semantics. The officers should be able to use words such as "tried to," "wilfully," "purposefully," "knowingly," or "**deliberately**," as was used in ***Harris***, 642 So. 2d at 1326, in describing Morris's driving at the time of the alleged incident. The officer's view that Morris was acting intentionally or deliberately is properly describing what the officers observed at the time. Use of any of the other words or combinations thereof is simply saying the same thing as acting with intent or intentionally. Morris is entitled to use similar words in describing his conduct as to whether or not he intended to harm anyone.

¶30. The State correctly points out that we all have daily driving experiences where someone cuts over into our lane of traffic. We have an opinion based upon our first-hand personal observations as to whether such an incident was accidental or unavoidable due to not seeing us, or that it was deliberate or intentional. Based on such first-hand knowledge, we believe we know the difference between accidental and deliberate or intentional, based upon the facts at that particular time. That is all that occurred here. The testimony should be admissible as lay opinion testimony, and the jury allowed to ultimately determine the issue of Morris's intent.

¶31. The second prong of Rule 701 is met in that the officers' testimony was clearly helpful to the jury in their determination of the intent element of the charge. The learned trial judge, in allowing this testimony, correctly pointed out that the question called only for a "common-sense observance." In my view, both prongs of the test required under Rule 701 were satisfied in the case at bar.

¶32. For these reasons, I respectfully dissent.

**MILLS AND COBB, JJ., JOIN THIS OPINION.**

1. Amended in 1998.