# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-KA-00712-SCT

*RUDY DESMOND TOLER a/k/a  RUBY*
*DESMOND TOLER a/k/a RUDY D. TOLER  a/k/a*
*RUDY TOLER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/12/2023 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| TRIAL COURT ATTORNEYS: | IAN LAWRENCE BAKER |
| | DAVID CHRISTOPHER DANIEL |
| | TYLER RAY HEFLIN |
| | WILLIAM CROSBY PARKER |
| | MICHAEL W. CROSBY |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY:  HUNTER N. AIKENS |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | WILLIAM CROSBY PARKER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 11/14/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., MAXWELL AND BEAM, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.    In 2021, Rudy Toler fired his handgun at four youths while traveling on Highway 90

between Pass Christian and Gulfport.  Following that incident was a high-speed chase by law

enforcement officers during which Toler fired two more shots upon the pursuing officers.

A Harrison County grand jury indicted Toler on ten felony charges:

Count 1:    aggravated assault against Madison Pitre

Count 2:    aggravated assault against Caleb Hanley

Count 3:    aggravated assault against Faithanne Reis

Count 4:    aggravated assault against Elijah Monell

Count 5:    shooting into a motor vehicle

Count 6:    aggravated assault against Officer Jeremy Bammert

Count 7:    aggravated assault against Officer Will Gossett

Count 8:    aggravated assault against Officer Wesley McNeece

Count 9:    aggravated assault against Officer David Butler

Count 10:   failure to stop a motor vehicle for law enforcement

In 2023, a jury found Toler guilty of counts one through seven, nine, and ten. The jury acquitted Toler on count eight. Toler contends that (1) the evidence was insufficient to convict him on counts six, seven, and nine; (2) the evidence was insufficient to convict him on counts one through four or, in the alternative, that he was erroneously charged and convicted of four counts of aggravated assault against the four youths when the evidence was insufficient to support more than one count of aggravated assault; and (3) the trial court abused its discretion by excluding evidence of Toler's peaceful character.

## FACTS AND PROCEDURAL HISTORY

¶2.     On June 12, 2021, seventeen-year-old Madison Pitre, along with three teenage friends, Faithanne Reis, Elijah Monell, and Caleb Hanley, left Pearlington, Mississippi, in a 2007 Honda Civic to attend an event in Biloxi at the Coliseum. Pitre drove while Reis sat in the right front passenger seat. In the back seat, Hanley was behind Pitre, and Monell was behind Reis.

¶3.     They were traveling in the left lane on U.S. Highway 90 during afternoon traffic. After descending the Bay St. Louis Bridge, the car in front of their vehicle abruptly turned left, causing Pitre to brake quickly. A black Hyundai Elantra traveling behind them then pulled alongside the Civic. Monell yelled that a man driving the Elantra, later identified as Rudy Toler, was aiming a handgun toward them. All observed the man pointing a weapon at them. Moments later, the man sped off.

¶4.     Pitre immediately contacted 911. She related to dispatch that a man pointed a black handgun at her friends and her and provided a description of the Elantra. After the Elantra had passed the Civic, it pulled off the road into one of the parking bays along Highway 90. As Pitre's vehicle approached the parked Elantra, all of the youths saw the same man aim a gun directly at them through his rolled-down window. Pitre sped up to avoid being shot, as the other three ducked to prevent being shot. The man then fired one shot at the youths. Pitre called 911 again, anxiously informing dispatch that the same man had aimed and fired the handgun at them. The bullet struck the front right wheel-well of the Civic only a few inches from where Reis had ducked. The bullet's impact punctured the front right tire of the Civic.

¶5.     The man then pulled along side the Civic once more, brandishing the handgun at the youths again and causing panic from everyone in Pitre's vehicle.  Pitre then noticed blue lights in her rear-view mirror before the man passed the Civic as pursuing law enforcement were closing in.

¶6.     Pitre parked her vehicle at Long Beach harbor.  Monell and Hanley proceeded to change Pitre's flat tire as the four waited for law enforcement.  Upon their arrival, investigators took statements from each of the youths and photographed the bullethole and shrapnel damage to the Civic.  Each youth separately testified at trial that Toler aimed the handgun at them and that Toler had fired at them.  Each testified that they feared for their life and for the lives of their friends.

¶7.     Officer Gossett of the Long Beach Police Department (LBPD) was inside department headquarters when he heard a radio dispatch describe a reckless driving incident involving a black Elantra and possible gunshots at another vehicle.  Gossett got into a patrol vehicle and began searching for the suspect vehicle with Officer Bammert following closely behind.

¶8.     The two officers located the Elantra amongst a group of cars on Highway 90.  The officers initiated their blue lights and sirens.  The posted speed limit in that portion of Highway 90 was forty-five miles per hour.  The Elantra began traveling at ninety miles per hour in heavy afternoon traffic, ignoring the lights and sirens of patrol vehicles, running red lights, and weaving in and out of heavy traffic.  Officer Butler of LBPD joined the pursuit as well as Officer McNeece.  After running the Elantra's tag, dispatch confirmed over the radio that "the driver was going to be one Rudy Toler."

4

¶9. Toler turned onto Woodward Avenue in Gulfport, Mississippi, nearly striking a child and an adult riding their bicycles in a residential neighborhood. Toler continued to lead the pursuit through residential neighborhoods.

¶10. From 43rd Avenue, Toler turned onto Railroad Street. Gossett had already made the turn followed by Bammert, and, as Butler was about to make the turn, Toler took aim and fired two shots outside his window at the officers while his vehicle was in motion. Butler confirmed over the radio that shots had been fired. No officer or vehicle was struck by the bullets. The officers continued the pursuit, positioning their patrol vehicles to shield each other in anticipation of additional shots fired in their direction. Toler slowed down drastically and then made an abrupt u-turn through a grassy field. Now facing the officers, Toler raised his gun and took aim once again.

¶11. The officers vaulted out of their vehicles, unloading multiple rounds at Toler. Toler put his hands in the air, which resulted in the officers immediately ceasing their fire. Gossett and Bammert removed Toler from his vehicle while Butler retrieved a Hi-Point .45 semi-automatic pistol on the passenger floorboard of the Elantra.

¶12. The officers observed that Toler had been grazed by a bullet above his right ear. The officers called for an ambulance and began to provide medical attention to Toler. During that time, law enforcement officers from multiple jurisdictions had arrived to the scene. One of those officers was Richard Tinsley of the Gulfport Police Department (GPD).

¶13. Tinsley received instruction to accompany Toler in the ambulance to Memorial Hospital. Toler responded to the questions of medical personal in the ambulance and later

at the hospital without issue. He was not provided any substance or medication, so he maintained complete sobriety. Tinsley accompanied Toler for a CAT scan. As Toler and Tinsely were walking out of the examination room, Toler looked at Tinsely and said, "[h]ey, I'm sorry for shooting at y'all." Tinsely responded that he did not have to apologize to him; he had shot at Long Beach officers. Toler reiterated, "tell them I'm sorry."

¶14. Medical personnel confirmed that Toler received a superficial, non-life-threatening graze above his right ear. Toler was discharged from the hospital and was interviewed at the Gulfport Police Department by Investigator Walker with the Harrison County Sheriff's Office (HCSO), Investigator Prine with GPD, Investigator Westbrook with the Mississippi Bureau of Investigation (MBI), and Investigator Frazier with the Harrison County District Attorney's Office.

¶15. Prine read Toler his rights. Toler then signed the waiver form. Video recording of the interview was played for the jury at trial. Additionally, a complete transcript of the interview was presented to the jury. Toler expressed that "I know what I did wasn't right. My actions aren't excused by no means. I was having a bad day. I'm depressed." During the interview, when addressing his protracted altercation with the youths, Toler stated in part that "I shouldn't have shot *at them* at all" and that "I pulled off on the shoulder, and was kind of like easing along until they got beside me and then I popped another shot *at them*." (Emphasis added.) Later, Toler stated, however, "I shot *at the kids* probably one time." (Emphasis added.) Toler expressed that he wanted to "[s]care the shit out of them," asserting that he merely "tried to shoot the engine in their car."

6

¶16. Regarding his pursuit by the officers, Toler explained that "I just kind of took off from them and I was running from 'em, and uh after about five minutes of pursuit I finally popped one out the window *at 'em*." (Emphasis added.) He revealed that he ran from the officers "because I knew I was going to jail" and determined that "I can either pull over and go to jail, or I can run from 'em and get killed." Toler further explained that "I tried to shoot *at the officers* across my whole body out the window." (Emphasis added.) When asked whether he understood that he was being pursued by law enforcement officers, Toler responded, "[a]bsolutely."

¶17. On January 22, 2022, a grand jury in the First Judicial District of Harrison County indicted Toler on ten felony counts. Toler was indicted for aggravated assault on counts one through four respectively against Pitre, Hanley, Reis, and Monell under Mississippi Code Section 97-3-7(2)(a) (Rev. 2020). Toler was indicted for shooting into a motor vehicle under Mississippi Code Section 97-25-47 (Rev. 2020) on count five. Toler was further indicted for aggravated assault in counts six through nine, respectively, against law enforcement officers Bammert, Gossett, McNeece, and Butler under Mississippi Code Section 97-3-7(2)(b) (Rev. 2020). Lastly, Toler was indicted in count ten for failure to stop motor vehicle pursuant to signal of law enforcement under Mississippi Code Section 97-9-72(2) (Rev. 2020).

¶18. Toler stood trial on January 24, 2023. Evidence was presented of the four youths' testimony, the four pursuing officers' testimony, the testimony of crime scene investigator Kaylee Vaughn, Officer Tinsley and Investigator Prine, and a crime scene analyst with the MBI. Evidence was also presented of crime scene photographs capturing where the bullet

had struck Pitre's vehicle, audio from Pitre's 911 calls, video and audio from Bammert's, Gossett's, and Butler's body cameras, as well as video, audio, and transcript of Toler's interview. After the State rested its case-in-chief, Toler moved for a directed verdict. The trial judge denied his motion. The jury found Toler guilty on counts one through seven, nine, and ten. The jury acquitted Toler of the aggravated assault charge against McNeese in count eight. Toler moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial judge denied that motion as well.

¶19. The trial judge sentenced Toler to twenty years each on counts one through four and thirty years each on counts six, seven, and nine—all to be served concurrently, which equates to a total of thirty years. Additionally, the trial judge sentenced Toler to five years on count five as well as five years for count ten to run consecutively. Accordingly, Toler was sentenced to serve a total of forty years in the Mississippi Department of Corrections. Toler now appeals, contending: (1) the evidence was insufficient to support the verdict on counts six, seven, and nine; (2) the evidence was insufficient to support the verdicts on counts one through four or, in the alternative, that he was erroneously charged and convicted of four counts when the evidence was insufficient to support more than one count of aggravated assault; and (3) the trial court abused its discretion by excluding evidence of Toler's peaceful character.

## STANDARD OF REVIEW

¶20. This Court reviews whether the evidence is sufficient to support a verdict de novo. *Turner v. State*, 387 So. 3d 1009, 1012 (Miss. 2024). In doing so, we view the evidence in

the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Robinson v. State*, 384 So. 3d 505, 511 (Miss. 2024) (quoting *Ambrose v. State*, 133 So. 3d 786, 791 (Miss. 2013)). The Court will not reverse unless the evidence presented at trial reveals that reasonable and fair-minded jurors could only find the accused not guilty with respect to one or more of the elements of the offense charged. *Hawkins v. State*, 377 So. 3d 969, 971 (Miss. 2024) (quoting *Campbell v. State*, 125 So. 3d 46, 51 (Miss. 2013)). Additionally, we review a trial judge's decision to exclude evidence for abuse of discretion. *Bland v. State*, 355 So. 3d 212, 215 (Miss. 2022). This Court will not reverse a trial judge's decision to exclude evidence unless we find that the trial judge's decision was arbitrary and clearly erroneous. *Clark v. State*, 315 So. 3d 987, 994 (Miss. 2021).

## I.    Counts Six, Seven, and Nine

¶21.   The jury found Toler guilty of aggravated assault against Bammert, Gossett, and Butler, and it acquitted Toler on count eight against McNeece. Toler contends that the evidence was insufficient to show that he intended to cause serious bodily injury to any officer. Specifically, Toler argues that because neither of his shots hit any police vehicle, he did not intend to fire at the officers. Toler further argues that, rather than attempting to shoot at the officers, he attempted to provoke the officers to shoot him by firing at the ground and out his window.

¶22.   "A person is guilty of aggravated assault if he or she (i) attempts to cause serious bodily injury to another or causes such injury . . . ." Miss. Code Ann. § 97-3-7(2)(a) (Rev.

9

2020). "The statute makes no distinction between aggravated assault and attempted aggravated assault; substantively, they are the same crime." ***Wilson v. State***, 904 So. 2d 987, 996 (Miss. 2004). To prove an attempt, the prosecution must show intent to commit a particular crime, a direct ineffectual act done toward its commission, and failure to consummate its commission. ***Morris v. State***, 748 So. 2d 143, 146 (Miss. 1999).

¶23. Under Mississippi Code Section 97-3-7(2)(b), "a person convicted of aggravated assault upon any of the persons listed in subsection (14) of this section under the circumstances enumerated in subsection (14) shall be punished . . . by imprisonment for not more than thirty (30) years . . . ." Miss. Code Ann. § 97-3-7(2)(b) (Rev. 2020). Mississippi Code Section 97-3-7(14)(a) reads that "[a]ssault upon any of the following listed persons is an aggravating circumstance for charging under subsections (1)(b) and (2)(b) of this section: (a) [w]hen acting within the scope of his or her duty, office or employment at the time of the assault: a . . . law enforcement officer . . . ." Miss. Code Ann. § 97-3-7(14)(a) (Rev. 2020). It is uncontested that the victims in counts six, seven, and nine were law enforcement officers for the Long Beach Police Department and were acting within the scope of their duties.

¶24. Evidence was presented of Bammert's body camera video that revealed, in addition to the entirety of the high-speed pursuit, audio of Toler firing two shots when he turned onto Railroad Street from 43rd Avenue. After the officers had Toler under arrest, Bammert's body camera video reveals the officers checking each other for injuries. When asked why they had done so, Gossett answered, "[t]o make sure we weren't shot" and that he believed Toler had shot at him.

10

¶25. Bammert's testimony also confirmed the events depicted in his body camera video, testifying that "I could hear the two shots being fired while I was starting to make my transition into the turn to go onto Railroad Street, just a little off to the right of Officer Gossett." When asked the distances between his and Toler's vehicles, Bammert responded, "[n]o more than about 30 yards" and that Gossett's vehicle was "[n]o more than five yards" from Toler.

¶26. Butler testified that "as we were making our turn onto Railroad Street from 43rd Avenue, Mr. Toler had already made his turn onto 43rd, Officer Gossett had also made his turn, Officer Bammert was about to make his turn, or was in the middle of making his turn as I was coming up to the stop sign, and Mr. Toler fired two shots towards the officers." Butler further testified that "I was able to look through the rear driver side window, and I was able to see a hand with a firearm in it. A semi-automatic dark colored firearm." When asked where Toler was aiming the handgun, Butler responded, "[d]irectly towards officers." When asked whether he observed Toler fire, Butler answered, "[t]wice. Yes."

¶27. Additionally, after receiving a CAT scan examination at Memorial Hospital, Toler told Tinsley, "[h]ey, I'm sorry for shooting at y'all." In his subsequent interview with investigators at the Gulfport Police Department, Toler admitted that "after about five minutes of pursuit I finally popped one out the window at 'em." Toler quickly corrected himself, stating, "[n]ot really at them, just kind of at the ground." When asked where he was when he first shot at the police, Toler answered, "I want to say I turned right by Waffle House on 90, when I pretty much shot out the door." When asked whether he shot across his body at

the officers or at the youths, Toler admitted, "[t]hat's when I tried to shoot at the officers across my whole body out the window." Toler again quickly corrected himself, stating, "[d]ischarge it, not aiming. . . . There's no way for me to aim. I mean I'm sure you might could, but with training or something [inaudible], but I ain't got no training like that." When asked whether he understood that he was being pursued by law enforcement officers, Toler responded, "[a]bsolutely."

¶28. Despite an abundance of evidence presented to the contrary, Toler asserts that his self-correcting statements following his admissions shed light on his true intention—that he never shot *at* the pursuing law enforcement officers. "[W]hen the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony." *Little v. State*, 233 So. 3d 288, 292 (Miss. 2017) (internal quotation marks omitted) (quoting *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980)). "[T]he credibility of a witness is solely for the jury to weigh and consider." *Miller v. State*, 983 So. 2d 1051, 1054 (Miss. 2008) (citing *Harris v. State*, 970 So. 2d 151, 156 (Miss. 2007)).

¶29. The jury resolved the conflict in the evidence by finding Toler guilty of aggravated assault as to counts six, seven, and nine. Viewing the evidence in the light most favorable to the prosecution, we find that sufficient evidence was presented for the jury to make that determination. From the evidence presented in this case, we find that a reasonable juror could find beyond a reasonable doubt that Toler intended to cause serious bodily harm to Gossett, Bammert, and Butler when he fired two shots at the officers while they pursued him in close proximity to his vehicle.

12

## II. Counts One Through Four

¶30. Toler was indicted and convicted of aggravated assault under Mississippi Code Section 97-3-7(2)(a) (Rev. 2020) as to counts one through four. Toler contends that because he fired just one shot, the evidence was insufficient to support more than one count of aggravated assault as to counts one through four.

¶31. The Court finds that Toler's indictment was multiplicitous. "An indictment is multiplicitous if it charges a single offense in more than one count." *McGlasten v. State*, 328 So. 3d 101, 103 (Miss. 2021) (internal quotation marks omitted) (quoting 41 Am. Jur. 2d *Indictments and Informations* § 196 (2015)). Courts guard against mutliplicitous charges due to the possibility that a defendant may receive more than once sentence for a single offense in violation of the Fifth Amendment's prohibition against double jeopardy. *Id.*

¶32. Mississippi criminal law lacks a multitude of precedent on multiplicitous charging. *See McGlasten*, 328 So. 3d at 103. The United States Court of Appeals for the Fifth Circuit has identified two categories of multiplicity challenges. *United States v. Woerner*, 709 F.3d 527, 539 (5th Cir. 2013). The first deals with charging under two different statutes, which is addressed in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). *Woerner*, 709 F.3d at 539.

¶33. At issue in the case sub judice, however, "[t]he second type of multiplicity challenge arises when charges for multiple violations of the same statute are predicated on arguably the same criminal conduct." *Id.* "In that circumstance, the court inquires 'whether separate and distinct prohibited acts, made punishable by law, have been committed.'" *Id.* (quoting

13

*United States v. Planck*, 493 F.3d 501, 503 (5th Cir. 2007)). The United States Court of Appeals for the Eleventh Circuit has found that "charges in an indictment are not multiplicitous if the charges differ by even a single element or alleged fact." *United States v. Woods*, 684 F.3d 1045, 1060 (11th Cir. 2012) (citing *United States v. Costa*, 947 F.2d 919, 926 (11th Cir. 1991)).

¶34.   In *Foreman v. State*, Foreman was found guilty of six felonies—four counts of aggravated assault, one count of murder, and one count of shooting into a vehicle—arising from his initially unsuccessful attempt to fire a handgun and subsequent successful discharge of the firearm into a vehicle containing five persons pulling out of a driveway at a party that Foreman attended. *Foreman v. State*, 51 So. 3d 957, 958-59 (Miss. 2011). Specifically,

> Shanique Kelly testified that after she and her cousins got into the car, she saw Foreman pull out a gun, point it at the car, and try to shoot it. She stated that Foreman then cocked the gun again and shot it, and the bullet went through the back windshield. Jessica Earls, a bystander, also testified that she saw Foreman shoot into Jones's car. The bullet struck Edward in the side of the head and killed him.

*Id.* at 959.

¶35.   On appeal, Foreman contended that he was erroneously indicted and convicted of six counts based on the same act of firing one shot into a vehicle. *Id.* The Court wrote that "Foreman ignores the evidence before the jury that he had tried to shoot the gun once before firing the fatal shot" and that "Foreman's first effort to discharge the gun would support a jury verdict for a charge of aggravated assault with a deadly weapon." *Id.* The Court held, however, that "we do find that the State erroneously charged (and Foreman was erroneously

14

convicted of) four counts of aggravated assault when the evidence supports only *one attempt*." *Id.* at 960.

¶36. In today's case, the evidence supports only one conviction and sentence of aggravated assault as to counts one through four. Each of those charges in Toler's indictment do not differ in fact. The record does not reveal any criminal act Toler took against any individual one of the youths that was separate and distinct from the others. And there was no differing elements as to counts one through four because Toler was indicted under the same statute for each of those charges.

¶37. Toler contends, however, that the evidence was insufficient to establish beyond a reasonable doubt that he intended to cause serious bodily injury to anyone in Pitre's car because he never intended to shoot at the youths directly but merely at their vehicle to scare them. "A defendant's intent to commit a crime is a jury question and may be determined from the defendant's acts and conduct." *Thomas v. State*, 277 So. 3d 532, 533 (Miss. 2019) (citing *Hughes v. State*, 983 So. 2d 270, 278-79 (Miss. 2008)). "Inferences of guilt may also be deduced from the surrounding circumstances and facts." *Id.* (citing *Ryals v. State*, 305 So. 2d 354, 356 (Miss. 1974)).

¶38. A similar argument was raised by the defendant in *Harris*. During a domestic disturbance, Harris broke into his estranged wife's residence and began a physical altercation with the people inside. *Harris*, 970 So. 2d at 153-54. One such individual, Grant, punched Harris in the face before fleeing out of the back door along with Harris's stepson. *Id.* Harris recovered and began firing at the two but failed to hit either. *Id.* On appeal, Harris

15

challenged his conviction of aggravated assault, contending that he merely intended to scare Grant rather than shoot him. *Id.* at 155. This Court found that

> The defendant admitted to discharging his weapon with the intent to scare Grant, and aggravated the conditions of the crime by employing a deadly weapon. There were discrepancies in the testimony as to whether Harris intended to harm Grant. Harris testified that he shot into the air at an angle, intending only to scare Grant. However, Cassandra and Katrina both testified that from their vantage point within the home, Harris appeared to be shooting directly toward Grant, not away from him.

*Id.* at 156. Accordingly, the Court held that "[b]ecause there was evidence that Harris attempted 'to cause serious bodily injury' to Grant, this argument is without merit." *Id.*

¶39. In the case sub judice, the evidence presented supports a conviction and sentence of aggravated assault against Toler for shooting at the occupants of Pitre's vehicle. Toler did not *just* brandish his weapon and take aim at the youths—elements of simple assault. *See* Miss. Code Ann. § 97-3-7(1)(a)(iii) (Rev. 2020). Evidence was presented via video and transcript of Toler's interview with law enforcement officers in which Toler admitted that "I shot at the kids probably one time." Earlier in the interview Toler admitted, "I pulled off on the shoulder, and was kind of like easing along until they got behind me and then I popped another shot at them, and then I took off."[1]

¶40. "Any conflicts in the evidence are for the jury to resolve." *Williams v. State*, 391 So. 3d 1151, 1158 (Miss. 2024) (internal quotation marks omitted) (quoting *Clements v. State*, 237 So. 3d 175, 183 (Miss. Ct. App. 2017)). Like in *Harris*, conflicting evidence was

---

[1]The prosecution's official position is that Toler fired one shot at the youths. Toler appears to misremember in his interview how many times he fired at them. Each occupant of Pitre's vehicle testified that they were shot at once.

16

presented regarding Toler's intent to cause serious bodily harm. He states that "I tried to shoot the engine in their car" and that "I shot kind of behind it, which I didn't injure none of them I know." But one sentence later Toler remorsefully admitted that "I shouldn't have shot at them at all." Additionally, each occupant of Pitre's vehicle testified that they observed Toler aiming his handgun at them before he shot. While Pitre sped up to avoid being shot, the other three occupants ducked. Each separately testified that in that moment, they feared for their own life and for the lives of their friends.

¶41. We find that the evidence presented was sufficient for a reasonable juror to find beyond a reasonable doubt that Toler intended to cause serious bodily injury to the occupants of Pitre's vehicle when, by his own admission, he fired at the occupants of the vehicle.

¶42. As Toler's indictment as to counts one through four was multiplicitous, we find that merger applies. "The correct and widely followed approach to dealing with multiplicitous counts is to merge the wrongly charged multiplicitous counts into one single count of conviction." *McGlasten*, 328 So. 3d at 108. Accordingly, we remand the case to the trial court with instructions to vacate Toler's sentences as to counts one through four, merge the four multiplicitous counts together for one count of conviction, and resentence Toler on the remaining conviction of aggravated assault as to counts one through four.

### III. Whether the trial court abused its discretion by excluding evidence of Toler's peaceful character.

¶43. Toler contends that the trial court abused its discretion when it excluded evidence of his peaceful character through Richard Ladner, Ricky Ladner, and Jeremy Seymour. Outside the presence of the jury, Toler's counsel proffered that those witnesses would testify to

17

Toler's reputation for truthfulness and peacefulness. The prosecution contended that because Toler's theory of the case was that he shot to scare the youths and to provoke the officers rather than shooting at them directly, reputation evidence of a peaceful character would be irrelevant.

¶44. "Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the case." Miss. R. Evid. 401. "Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; the Mississippi Constitution; or these rules. Irrelevant evidence is not admissible." Miss. R. Evid. 402.

¶45. Generally, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Miss. R. Evid. 404(a)(1). However, "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it . . . ." Miss. R. Evid. 404(a)(2)(A). "When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Miss. R. Evid. 405(a). Although a defendant may introduce evidence of good character, "[p]roof of a character trait . . . may not be made by proof of specific past actions. The defendant is limited to offering testimony as to general reputation." *Bennett v. State*, 933 So. 2d 930, 945 (Miss. 2006) (alterations in original) (internal quotation marks omitted) (quoting *Winters v. State*, 449 So. 2d 766, 768 (Miss. 1984)).

18

¶46. After considering arguments from counsel, the trial judge found that

> [A]s to the peacefulness opinion or reputation under 404(a)(2)(A) and 405, it's been, I think everyone's experience, that that type of reputation or that type of character evidence, rather, is important in cases of self-defense where the defendant is attempting to show that he is a peaceful person and that his self-defense claim has merit. That's a whole different scenario than we have here whereby the defendant's own admissions he admitted to possessing, brandishing, and firing a pistol at least three times at five separate cars, arguably. And his admissions are that he committed acts of violence. So to say that he is not a violent person, I think, does not do justice to the rule.

¶47. We agree with the trial judge. "[T]he standard of review regarding the admission or exclusion of evidence is abuse of discretion." *Jones v. State*, 904 So. 2d 149, 153 (Miss. 2005) (citing *Herring v. Poirrier*, 797 So. 2d 797, 804 (Miss. 2000)). This Court will not reverse a trial judge's decision to exclude evidence unless we find that the trial judge's decision was arbitrary and clearly erroneous. *Clark*, 315 So. 3d at 994. Because Toler admitted to brandishing, aiming, and firing a handgun, in addition to his theory of the case that he merely intended to scare the youths and to provoke the law enforcement officers to shoot him, the trial judge's decision to exclude evidence of Toler's character of peacefulness was not arbitrary and clearly erroneous. Accordingly, we find that the trial judge did not abuse his discretion.

## CONCLUSION

¶48. The evidence presented was sufficient for a reasonable juror to find beyond a reasonable doubt that Toler intended to cause serious bodily harm to the law enforcement officers as to counts six, seven, and nine. Additionally, the evidence presented was sufficient for a reasonable juror to find beyond a reasonable doubt that Toler was guilty of one count

of aggravated assault against the occupants of Pitre's vehicle as to counts one through four. Therefore, we remand the case to the trial court with instructions to vacate Toler's sentences as to counts one through four, to merge the four multiplicitous counts together into one count of conviction, and to resentence Toler on the remaining conviction of aggravated assault as to counts one through four. Lastly, we find that the trial court did not abuse its discretion by excluding evidence of Toler's peaceful character when Toler admitted to possessing, brandishing, and firing a handgun at least three times at multiple different vehicles.

¶49. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**